Welcome everyone. It's nice to have live with everyone alive. So good to have you all here. Just a reminder about your time limits. I'm sure you're very familiar with that. Also, if you are referencing the record, please give us a record site. Please recall that rebuttal is for rebuttal only. And with that, I think we have very well-experienced lawyers here, so we'll just get to it. I am not going to read all 11 cases, because that would take your whole 40 minutes. So I will just say case number 19-10649, United States v. Castillo, and the other consolidated cases. And we will begin with Mr. Brown. Thank you, Your Honor, and may it please the Court. Although the appellants present a variety of challenges in this consolidated appeal, this Court can resolve each case using the following two-step analysis. First, Your Honor, you should accept the orders on limited remand as an explicit indication of the district court's intent. In those orders, the district court explained that it had not imposed the challenge conditions in an attempt to carry out or clarify any of the other conditions included in the judgment. It instead indicated a previously unstated policy preference for lists of standard conditions no longer in effect. I noticed that you didn't distinguish Holland in your reply brief. The government cited it. How do you distinguish Holland that basically was about the people and place kind of being the same thing? Yes, Your Honor. Now, Holland is an unpublished decision, and I decided not to deal with it, largely based on space issues. I think it's wrongly decided. It's a what? I think it's wrongly decided, Your Honor, and I think it's unpersuasive. That's true for a couple different reasons. On the one hand, whereas the Sentence Commission did, in fact, excise the shall not frequent condition because its concerns were encompassed within another condition, the one that prohibits defendants from interacting with those knowingly engaged in criminal activity, that does not mean that the conditions are literally redundant. I think what it means is that the commission's primary concern with the shall not frequent condition was subsumed within the other, so the shall not frequent condition was superfluous. But that doesn't mean that by violating one, you necessarily violate the other, and I think you can prove that with a series of hypotheticals. So, for instance, Mr. Holland. Well, Counsel, before you go there, let me ask you this. Do we go with what the Sentencing Commission stated, that it was a duplicative condition, so therefore it was unnecessary, or are we to go with the plain language of the condition? I mean, where I suspect you're going with the hypotheticals. I mean, in other words, how much credence do we give, not only Holland, but also what the Sentencing Commission said, that this condition was redundant? Well, Your Honor, I think we do need to look at the explicit language of the conditions. We need to compare the out-of-date shall not frequent condition included in the judgment with the up-to-date condition, which prohibits interaction with criminals. How much force do we give what the Sentencing Commission said as far as its rationale for deleting the condition? Well, I think the rationale, Your Honor, is ultimately irrelevant in light of the textual differences between the two conditions. And to the extent where to defer to it at all, I would just point out those textual differences and note that they are not literally redundant. It's just that the concerns the Sentencing Commission had about one could be subsumed within the other. So Holland, you say, is not persuasive. What's your best case to lead us to where you want us to go? Your Honor, I think the best case on the shall not frequent condition is, I believe it would be Tang, Your Honor. In Tang, this court dealt with an oral pronouncement which required a defendant, pardon me, prohibited a defendant from cohabitating with anyone with children under the age of 18. In the condition, in the judgment, the judge added a no-dating rule. It was subsumed within the same condition. All they added was two words, cohabitate or date. So we know that that judge, we can infer from the facts of that case, that the judge's concerns were the defendant gaining access to young people because the defendant had repeatedly violated sexual registration laws, had used false names, and had moved in with women who he was dating who had minor children. So the district court's concerns were clearly, the district court's intent was clearly in line with that no-dating cohab, no-dating prohibition, but there was still a conflict because we looked at the objective meaning of what the district court said to the defendants in court and that objective meaning was different from the additional restriction added in the  So let's go back to this point to focus on what the district court said in each of these defendants' presence because that's where we must begin our analysis in any of these conflict cases. In each case, the district court indicated that it would impose the standard conditions of supervised release that would be set forth in a forthcoming judgment. So given the timing and the content of those statements, I think a reasonable listener could only interpret them to refer to the conditions recommended as standard in the          . so, the argument there that hypothetical about drug dealers at the grocery store is inconsistent with even the defendant's own briefing in which they referred to it as a quote, trap house condition, which means that they are a natural reading of the condition is that it, it prohibits them from going places where the specific purpose of the place is to buy and sell illegal drugs and I think that's the most natural reading of the condition, the sentencing commission also thought that that was what the condition meant and I think they are to, so what is that, I mean because there's seldom a building that says this is the drug house, please come, so typically drug dealing is done sometimes in a plain old house but in places where something else is going on, a park, whatever, whatever or somebody's home that is their home but then they also do drug dealing, so I guess I'm trying to understand how it, you know, because it's very critical, you're on supervised release, you better comply with it, so they need to know, it needs to be clear, so you're saying it's clear they can go to this grocery store that's full of drug dealers in the parking lot but they can't go where, where can't they go? So, they cannot and I think the hard work to answer your question, Judge Eve, the hard work that's being done in that condition is the word frequent, the defendant upon their release are prohibited from frequenting places where drugs, illegal drugs are, what if they like to walk in the park every day or what if the hypo was working at that grocery store, so of course they're all, every day they park in the, as far away from the door as possible so the customers get the better parking, walk down that long parking lot where there's all these drug dealers but they don't interact with them, now that would be not a violation under the current standard, so tell me why it's not a violation of the, of the standard here? Our position with respect to that hypothetical, I have two answers to that, to respond to the specific hypothetical, our position is that the grocery store, the H&B or the Albertsons itself is not a place where drugs are bought and sold, I mean you're in the bread aisle and there's people selling drugs in the parking lot, you're there to buy your milk and your newspaper, that, you're not in the place where they're selling drugs. The counsel, an employee who's assigned to go get the carts from the parking lot on a regular basis would be frequently in the parking lot where, in Judge Haynes' hypothetical, drug deals are going on, in other words it's not the shopper that's going there to get bread and eggs, it's the person who works there who's going to be in that position five, six days a week, how's that not frequenting a place where drugs are sold? I think that we could come up with scenarios like that, I mean I think for any number of different sort of wording variances between different conditions, I think ultimately we have to go back to what the commission thought that the commission. All right, well let's stop right there because I think that was where I was going to go. We can come up with hypotheticals, another one is for example what if a fellow lives in an apartment complex that's drug ridden, it may not be his apartment but all the common areas, I mean we could go on and on about hypotheticals, so what are we to do as the court, and I ask counsel opposite this as well, how much emphasis do we put on what the sentencing commission thought or what they said as far as why they were repealing this condition or deleting it versus the fact that textually we had a condition before, we don't have one now, and the text of the prior condition is different than the currently existing condition, the one they said was duplicative, right? So is it enough for us to say well we can come up with hypotheticals therefore this thing is overbroad or it's not the same or there's a conflict or tell me, tell me how do we do it the way you want us to do it. I'm sorry, I missed the last part of that question. Tell me how we get there using the text of the guidelines knowing that one has been deleted but the text is distinct between the one that the commission says is redundant. So, I think, I'm having a little technical difficulty here, I think that, I mean ultimately I think the issue before the court here where you have one that's been deleted is exactly what the court did in Holland, exactly what this court did in Garcia. I mean the court's analysis does not, about some barriers in the language of conditions survive Diggles. Diggles has aimed to clarify the law with respect to what has to be pronounced at sentencing and at the end of the day the purpose was for the law to be more clear. Now, the road that these types of hypotheticals that, Yes, but if the law is to be more clear, I am now confused about what this standard of this supervised release condition is about the places where drugs are sold and if I'm decades and a judge for decades, that's a little bit worrisome, isn't it, for criminal defendants who presumably have not been lawyers and judges for decades? I think we have a good reason not to be worried about it which is that it was in the guidelines for years before the Diggles was decided and before the 2016 amendments in Section 803 and we did not see appeals where people were getting their probation revoked for working at a grocery store where people sold drugs in the parking lot. I mean ultimately this is not a categorical analysis. In fact, the court is quite the opposite of a categorical analysis of comparing the precise language of what was pronounced with a wording difference and it's also the law that the one with a judgment condition simply effectuates what was in the, what was pronounced at sentencing. So at sentencing it was pronounced, I mean he understands it mandatorily. Ms. Topper, how do you address the facts of this case? So even if we accepted what you said as sort of a generic issue, this judge's clarification sounds a bit different from the sort of generic world that you were addressing. How do we address this case and these cases? Absolutely, Your Honor. Our view is that the district judge's clarification order is not relevant to legal analysis here. Ultimately, the pronouncement analysis is a due process inquiry that notice and the notice that they received at the sentencing hearing is the relevant question. They agree that they received notice at the hearing that they would be imposed to what standard conditions. Now, later . . . But counsel, that isn't that the crux of the problem is that the defendant under Diggles is supposed to be able to know what the conditions the court is proposing, be able to talk about that with counsel, have the opportunity to object. So by definition, if the defendant doesn't know what the condition, which condition the court intends to oppose, how can Diggles be satisfied? Absolutely. We agree going forward that . . . We're not talking about going forward. We're talking about these cases and the rights of these defendants. Absolutely. These are pre-Diggles cases. We have a situation where something was pronounced, they understood it to mean the current conditions. We agree that the outdated conditions were not pronounced, but yet the court's inquiry still stands as to whether there is a difference. Now, as Judge Haynes mentioned, the district court is free going forward to impose anything at once under the sun so long as it pronounces it under Diggles. But here, we have to look at what was the law at the time of the hearing, what did they understand it to mean, with respect to the district court's analysis that its own conditions were somehow extremely different and unique. That's just not played out by comparing the text of them side by side. So I'm going to go ahead and turn the floor over to my colleague to discuss the other things, and he can also answer any more questions about this condition as well. Okay. Thank you. So, Mr. Hillstrap, I guess you can . . . I know that you all addressed different pieces, but this is sort of a policy question that I have for you. Why are we here? I mean, you all took it back to say this was a clerical error, you know, fix it, Judge, and then the Judge disagreed. Why didn't you all say, well, we'll just agree with the defendants on this one? Of course, Judge Haynes. Stephen Gilstrap, and may it please the Court. To answer that question, when the government agreed to the limited remand earlier, that was to determine whether there was, in fact, a clerical error or to obtain clarification, as the district court said here, that there wasn't a clerical error. And once the district court confirmed that, in its view, it did not make a clerical error, we looked at the conditions. We looked at Holland. We looked at what the Sentencing Commission said about them. And based on our analysis, we did not see a conflict between the conditions that were imposed, the oral pronouncement, and the written judgment. And because we didn't see a conflict as to the four conditions, especially the two that are relevant to Ms. Goosby, where we have the pronouncement issue that Judge Wilson was talking about earlier, we didn't see a conflict. And under this Court's case law, because we didn't see a conflict, there wasn't a basis to concede error. And kind of going forward with that, even if the district court said that it had a preference for these outdated conditions, that's not dispositive to the question of whether there's a conflict or not, for a couple reasons. First is, these conditions have multiple pieces and multiple parts. Defendants are not challenging every piece or every part of the conditions. And the standard condition 10 in Ms. Goosby's case that relates to drug paraphernalia is a great example of this, because that condition has the excessive alcohol restriction that was involved in the colloquy between Ms. Goosby's counsel and the district court at her revocation hearing. It has restrictions on drug possession abuse and drug paraphernalia use and possession. When the Sentencing Commission amended the standard conditions in 2016 as part of Amendment 803, it dealt with those two pieces differently. It said, we think that the excessive alcohol condition fits best in a special condition and should only apply in certain circumstances. But as to the controlled substances piece of that outdated standard condition, we believe that that's covered by other mandatory conditions where you can't violate a federal state or local law, you can't use or possess drugs, etc. And so, just because you prefer an outdated standard condition, or even if you think the outdated standard condition is different, that may be true as to part of it, but you have to look at what specifically is being challenged here. But what doesn't standard drug use involve paraphernalia? It does, Your Honor. And so, that's one of our reasons that we think that there is redundancy between drug paraphernalia possession abuse and the use of drugs, which everyone admits and concedes is covered by mandatory conditions. Also, in Texas, it is against state law to possess drug paraphernalia. So, if you possess drug paraphernalia, you would be in violation of state law, which is another mandatory condition. And so, that's why we believe that that condition, which is relevant only to Ms. Goosby, even if you think that abuse of discretion applies as opposed to plain error, as the government argues, there's no conflict between the two because the substance of that is covered. Moving backwards, I guess, to the reporting condition, the analysis is really the same. Under the current version of the probation reporting condition, a district court or a probation officer can choose the how and when a defendant reports to probation. There's no dispute about that. Here, all that happened is in the district court's revocation judgment, it gave Defendant Goosby the how and the when. It said, you're going to report to probation and you're going to submit a written report within the first five days of the month. While the current conditions envision that that sort of additional specific guidance will be given once they're on supervised release and have reported initially, essentially the only difference is the district court gave Ms. Goosby additional notice than the current standard conditions envision. It didn't enlarge anything. It didn't broaden the condition. It just gave her notice of how she was going to have to report. Let me ask you something going back to the initial interchange that we had, which is, I asked you kind of like, why are we here? You said, well, because we gave the judge a chance to assess whether there was a clerical error and he said there wasn't. It seems to me like, why was it remanded if you didn't think there was a clerical error? Then, since the judge didn't think there was and gave this clarification, why is that We thought that there was a possibility that there was a clerical error based on, as Mr. Brown has talked about, the language of I'm imposing these standard conditions. We thought that there was at least an ambiguity there. It turns out Judge McBride was not the only district judge that had been imposing certain outdated conditions. Other district judges in the Fort Worth Division mainly. They all said it was a clerical error. They said it was a clerical error. So, then I'm wondering, again, why is a judge who's going to enforce the supervised release, if somebody is brought back and said, oh, this person violated supervised release, it's going to come back to that judge. Why is his clarification irrelevant? Well, I think it's irrelevant as to the Diggle's pronouncement issue. I think that is what Ms. Falconer was saying when she said it was irrelevant. Because when you pronounce the sentence, what you say after the fact as to what you meant or anything like that, that really is irrelevant as to the Diggle's analysis. As to whether there's a conflict or not, which is really the second step in the analysis if this court is to find a pronouncement error, which the government concedes as to everyone but Ms. Goosby for the reasons that Judge Wilson and Mr. Brown talked about, whether there's a conflict or not is an issue for this court to decide as it did in Holland. Whether Judge McBride believes that . . . But Holland wasn't faced with . . . it was a different judge and there wasn't a clarification. So, Holland wasn't faced with the facts we have here. So, I mean, I realize it's unpublished. We're not bound. But we respect unpublished opinions. But even if we respect it and say it's fine as it is, does that mean that we have to come out the same way given that I see a distinction here? Because y'all went back and asked the judge and the judge was very clear that he's leaving this stuff in obviously because he doesn't think they all just glob together. Why would he? I mean, if it all is the same thing, why leave it in there? Because he knew there was going to be an appeal and he knew all of what was going to transpire. So, if he thought A and B are the same thing, he could have said, well, I meant to impose both A and B, but they're the same thing. He obviously didn't think so. Why is that irrelevant? Well, and I think when you look at the limited remand order and there are several iterations because these kind of went back in different packs, there is not a specific statement of Judge McBride saying, I think the shall not frequent condition is substantively different than the do not associate with known criminals condition. It's not at that level of granularity. It is more of the mindset of these are the standard conditions that I impose because I prefer these standard conditions. But there's not – and I prefer them for some policy basis. He doesn't really get into the details of I think these are broader or I think these are narrower or anything like that. He just says he prefers them. And it's not a sort of condition by condition analysis as to the four conditions that are at issue here. I mean, he doesn't dig into the notify third parties condition and say, oh, I think this one is different than the current version for this reason. It's just kind of more of a generalized statement of these are my preferred conditions. But that doesn't mean that these preferred conditions are broader or more onerous so as to create a conflict under this court's precedent. Didn't he just pretty much say this is the way I've always done it? He did, Your Honor. He said these are the conditions that I've been entering for 20 plus years, and people who practice in my court regularly know that these are the conditions.  Yes, Your Honor. With the last minute of my time, I'll briefly discuss remedy because I think it's important. For the reasons stated in the government's brief and presented in argument today, the government believes that there is not a sufficient conflict between the oral pronouncement and the written judgment in any of the cases. So we believe this court can affirm the judgments as they are. That said, to the extent that this court finds that there is a conflict as to any of the conditions or one of the conditions or something like that, the government and the appellants agree with this, believe that the court can and should under 28 U.S.C. 2106 just affirm the judgments as modified to take account for any conditions that need to be struck. Given the limited remand that already occurred here, the fact . . . I think it . . . If this word needs to be deleted, we just delete it. This court can do that under the precedent cited in our brief, and I think given the previous remands and the fact that there are 11 cases just for judicial economy . . . We don't need to add to the district court's . . . That would be the government's recommendation, Your Honor. Okay. Thank you. All right, and we will hear your rebuttal, Mr. Brown. Thank you, Your Honor. I'd just like to address three topics briefly that came up in the government's argument. I'd like to address the district court's order. I'd like to address the structure of the judgment. And I'd like to address Mr. Gilstrap's arguments with regard to misdemeanor. I'll begin with the order. So I agree that the order is not dispositive on this court's analysis. But these conflict cases often turn on the district court's intent. And the order is the best indication we have of the district court's intent with regard to the various conditions and their relationship to one another. Now, the government is arguing that the conditions I have challenged are generally consistent with the district court's intent. But consistency is not enough. The terms of one condition must be literally subsumed within another, such that they are actually redundant and you can't violate one without violating the other. I'd also note that the government, in their briefing at least, attempts to glean intent where the district court exercised none. So they point to mandatory conditions involving – prohibiting the use and possession of controlled substances. Now, those are mandatory conditions, so their imposition in any particular case tells us nothing about the district court's concerns. Next, Your Honor, I'd like to briefly address the structures of the judgment. We focused primarily today on the text and comparing the out-of-date conditions with the up-to-date conditions. But another arrow in my quiver is the fact that the judgments themselves separate these rules into separate prohibitions. So in your typical ambiguity case, the district court will announce generally that a defendant must engage in some sort of treatment or some sort of drug testing. And then in the judgment, there will be some additional rule concerning that you must pay costs incurred or that, for instance, in a recent case – Follow in the same paragraph is what you're saying? Exactly right, Your Honor. Exactly right. And that makes the court's intent clear. That's sort of an extra text argument, that when you have different paragraphs, they ought to be saying different things. We learned that in law school. We don't all follow it. Exactly, Your Honor. And I think that is appropriate here. So putting aside the district court's order, I think we can infer his intent based on the placement of the various conditions within the judgment. Last, Your Honor, I would like to deal with the Goosby arguments. So first, Mr. Gilstrap – Well, before you do, though, what is your response to the Judge McBride's clarification is irrelevant argument? So it's certainly not irrelevant, right? In these cases, we have – What is the relevance of it? Walk me through that. Your Honor, I think it is the best indication of the district court's intent regarding the interplay of these conditions. So although that is not dispositive, I think it helps prove my point if even Judge McBride considered these conditions separate prohibitions that deserve to be enforced separately and placed separately in the judgment. Okay. And then on the text point, can you summarize, in one or two sentences, one paragraph, what is your answer to the text versus what the commission thinks point? I want to be clear. I'm not sure I got a clear answer to that when you were responding to Judge Wilson. Your Honor, the text controls. That is my one sentence answer. Okay. I think the commission provided some indication of why it believed they were related generally and decided that one was – Well, is it possible that what the commission meant was they're focusing on interacting with the people selling rather than walking through the grocery store parking lot every day without talking to anybody? I mean, in other words, the narrowing, if you will, of that condition is focusing on what really matters, which is interacting with people that are selling drugs rather than you happen to be in the park where they're selling drugs but you're just walking your dog. I think that's true, Your Honor. And I think, again, that helps prove our point that by including the additional conditions, Judge McBride has broadened the restrictions that would otherwise apply. Okay. Goosby. Yes, Your Honor. Quickly on Goosby. With regard to Goosby, first, Your Honor, it would be possible for her to violate the paraphernalia condition without violating the law, and that's because federal law does not actually criminalize the possession of paraphernalia, and Texas law only criminalizes the use or possession with intent to use for specified purposes. The condition is broader than that. The condition says that Ms. Goosby cannot possess it if it's related to a controlled substance, and relation just means that – Is there ambiguity in paraphernalia? I don't think that term paraphernalia is ambiguous, Your Honor. Okay. So then explain to me why you could have the drug paraphernalia but not violate Texas law? Under Texas law, you have to possess it with intent to use for a specific purpose like ingestion or cultivation. I think that Ms. Goosby could possess a paraphernalia that was related to controlled substances without possessing it with that intent. So why would you possess it for any other reason? Well, I'll go back to hypothetical, Your Honor. Let's say that Ms. Goosby finds on the street in front of her house either a crack pipe or a used syringe. She may suspect, she may even know that that item has been used recently to ingest drugs. She may pick it up to give it to a police officer or throw it in the trash. I think her possession would relate to the use of a controlled substance generally, but she would not thereby possess it with intent to ingest drugs on her own. And, Your Honor, if I may, just briefly on the written report condition, the up-to-date condition allows Judge McBride to give informal reporting requirements after the initial reporting requirement, after the initial in-person meeting. That is a clear confidence since he has now given them beforehand and codified them in the judgment. Okay. That's all I have, Your Honors. Thank you for your time. Thank you very much. We appreciate both sides' arguments and the cases under submission. You all are excused.